IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JAMIE L. ADAIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-3149 |
| | ) | |
| CAROLYN COLVIN, acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff Jamie L. Adaire seeks judicial review of the Commissioner of Social Security Carolyn Colvin's final decision that found Plaintiff was not disabled, and, therefore, not entitled to disability insurance benefits under the Social Security Act, 42 U.S.C. § 301 et seq.  The matter was referred to Magistrate Judge Byron G. Cudmore pursuant to 28 U.S.C. § 636, who recommended that the Commissioner's final decision be affirmed.  See d/e 23.  Plaintiff now objects to Magistrate Judge Cudmore's Report and Recommendation.  See Objections, d/e 25, 27. The Court OVERRULES Plaintiff's Objections and ADOPTS the Report

and Recommendation (d/e 23) as the Order of the Court.  Administrative Law Judge Barbara Welsch (the "ALJ") supported her decisions with substantial evidence and relied on evidence in the record to determine that Plaintiff's reports of his mental and physical limitations lacked credibility.  Furthermore, Plaintiff has failed to demonstrate that the ALJ was biased against Plaintiff.  Accordingly, the Commissioner's Motion for Summary Affirmance (d/e 21) is GRANTED and Plaintiff's Motion for Summary Judgment (d/e 19) is DENIED.

## I.   BACKGROUND

Plaintiff applied for disability benefits on April 6, 2004, alleging disability as of July 1, 2002.  d/e 17-1 at 30; d/e 17-14 at 2.  The Illinois Bureau of Disability Determination Services denied Plaintiff's claim both initially and on reconsideration.  d/e 17-14 at 2.  Thereafter, Plaintiff requested a hearing on his claim before an ALJ.  On July 23, 2007, ALJ Welsch denied Plaintiff's claim following a hearing.  d/e 17-14 at 11.  Plaintiff then sought review of the ALJ's decision by the Appeals Council.

Meanwhile, on December 17, 2007, the Illinois Bureau of Disability Determination Services ruled on a second application for

disability benefits filed by Plaintiff and found that Plaintiff was disabled. d/e 17-14 at 14.  The Appeals Council reopened and remanded the state agency's December 17, 2007 favorable determination along with the ALJ's July 23, 2007 unfavorable decision.  The two proceedings were consolidated on remand with an order that ALJ Welsch resolve the discrepancy.  d/e 17-1 at 30; d/e 17-14 at 17.

On June 3, 2009, ALJ Welsch conducted a supplementary hearing. d/e 17-1 at 30; d/e 17-17 at 29.  On November 23, 2009, the ALJ issued a decision denying both of Plaintiff's claims that had been consolidated on remand.  d/e 17-1 at 27.  Plaintiff requested review of the ALJ's decision by the Appeals Council, and the Appeals Council denied Plaintiff's request.  Denial of the request meant that ALJ Welsch's decision became the final decision of the Commissioner.  d/e 17-1 at 19; see also 20 C.F.R. §§ 404.955(a), 404.981.

A.    The ALJ Determined On Remand that Plaintiff's Physical and Mental Limitations Do Not Prevent Plaintiff from Engaging in Gainful Employment

In the decision, ALJ Welsch concluded that Plaintiff had not engaged in substantial gainful activity since July 1, 2002 and that

Plaintiff suffered from severe impairments due to scoliosis, right cubital tunnel syndrome, headaches, depression, anxiety, and somatization disorder[1].  ALJ Decision 2009, d/e 17-1 at 32.  If Plaintiff's impairments or combination of impairments had met or equaled a Listing in 20 C.F.R. § 404, Subpart P, Appendix 1, then Plaintiff would have been considered disabled.  However, the ALJ found, based on the opinions of Dr. Roger Traycoff, M.D., Dr. John Fisk, M.D., and Dr. Joshua Warach, M.D., that Plaintiff's reports of his physical and mental limitations lacked credibility.  The ALJ then concluded that Plaintiff had not presented credible evidence demonstrating his impairments met or equaled Listing 1.02 for joint problems, 1.03 for surgeries, 1.04 for spinal disorders, 1.11 et seq. for neurological impairments, 12.04 for depression, 12.06 for anxiety, and 12.07 for somatoform disorder.  ALJ Decision 2009, d/e 17-1 at 33.

---

[1] For the purpose of evaluating disability under the Social Security Act, the Social Security Administration defines somatoform disorder as a disorder marked by physical symptoms for which no demonstrable organic findings or known physiological mechanisms exist.  § 12.07 (Somatoform disorders), available at http://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_07.

After determining Plaintiff did not have impairments that met or equaled a Listing, the ALJ found that Plaintiff had the Residual Functional Capacity to perform light and sedentary work except that Plaintiff could not climb or work at unprotected heights, perform over the shoulder reaching, perform repetitive bending or stooping, kneel or crawl, or perform rapid repetitive hand movements. ALJ Decision 2009, d/e 17-1 at 34. The ALJ also limited Plaintiff's Residual Functional Capacity to unskilled work that is routine and repetitive in nature. ALJ Decision 2009, d/e 17-1 at 34.

To support this Residual Functional Capacity finding, the ALJ relied on the opinions of state agency physicians Dr. Julio Pardo, M.D., Dr. Towfig Arjmand, M.D., and Dr. Frank Jimenez, M.D., and state agency psychologists Dr. D. Galassi-Hudspeth, Psy.D., and Dr. Margaret Wharton, Psy.D. However, the ALJ did not rely on Plaintiff's treating physician Dr. Paul Smelter's opinion that Plaintiff could not work because of Plaintiff's limits on the use of his right hand and arm. d/e 17-1 at 37, 39. Additionally, the ALJ rejected the opinions of Dr. G.

Leighton Wasem, Licensed Clinical Professional Counselor, regarding

Plaintiff's mental and physical limitations.  d/e 17-1 at 40.

Based on this Residual Functional Capacity finding, Plaintiff was

not able to perform his past relevant work as a psychiatric aide/ward

attendant, hotel clerk, and laundry worker.  However, vocational expert

Dr. James Lanier, Ph.D., testified during the first administrative review

hearing that an individual of Plaintiff's age, education, past relevant work

experience, and Residual Functional Capacity could perform the light

work of an order clerk, information clerk, ticket seller, and small package

deliverer, or the sedentary work of a surveillance system monitor, ticket

checker, and information clerk.  d/e 17-1 at 46-47.  Dr. James Lanier also

testified that none of these jobs requires the use of an individual's

dominant hand.  d/e 22-1 at 29.  ALJ Welsch relied on Dr. Lanier's

testimony in each of her decisions denying Plaintiff's claims for Social

Security Disability Benefits.

## B.    Plaintiff Sought Review in this Court of the Commissioner's Decision that Plaintiff is Not Disabled

Plaintiff filed a Complaint in this Court for review of the

Commissioner's decision pursuant to Section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g). d/e 1. Later, on January 5, 2012, Plaintiff filed a Motion for Summary Judgment. In the Motion, Plaintiff argued that the ALJ erred by finding Plaintiff could perform jobs that exist in significant numbers in the national economy. Plaintiff also argued that the ALJ erred by not giving controlling weight to the opinion of Plaintiff's treating physician Dr. Smelter, by rejecting Dr. Wasem's opinions, by failing to address vocational expert Bonnie Gladden's testimony, by not adequately considering the opinions of state agency psychologist Dr. Linda Lanier, Ph.D., and state agency physician Dr. Vittal Chapa, M.D., and by finding Plaintiff's reports about the severity of his impairments not credible. Furthermore, Plaintiff argued that the ALJ was biased against Plaintiff.

On April 2, 2012, the Commissioner filed a Motion for Summary Affirmance of the Commissioner's Decision (d/e 21). The case was then referred to Magistrate Judge Cudmore for Report and Recommendation on the Cross Motions for Summary Judgment.

On May 1, 2013, Magistrate Judge Cudmore submitted a Report and Recommendation (d/e 23), recommending that the Commissioner's

decision be affirmed.  The Court accepts and adopts Magistrate Judge

Cudmore's recitation of the facts in the Report and Recommendation.

In the Report and Recommendation, Magistrate Judge Cudmore

found the ALJ's conclusion that Plaintiff can perform jobs that exist in

significant numbers in the national economy was supported by

substantial evidence.  Additionally, Magistrate Judge Cudmore concluded

that the ALJ explained her reasons for not giving Dr. Smelter's opinion

controlling weight and for rejecting Dr. Wasem's opinions regarding

Plaintiff's physical and mental limitations.  Magistrate Judge Cudmore

also determined that the ALJ supported her credibility finding with

evidence from the record and that the ALJ was not biased against

Plaintiff.  Lastly, Magistrate Judge Cudmore concluded that the ALJ

properly rejected vocational expert Bonnie Gladden's response to the

hypothetical questions posed by Plaintiff's attorney during the second

administrative hearing and that the ALJ adequately considered Dr. Linda

Lanier's and Dr. Chapa's opinions.

## II.  LEGAL STANDARDS

If the Appeals Council denies review of an ALJ's decision, as the Appeals Council has done in this case, then the ALJ's decision constitutes the final decision of the Commissioner.  20 C.R.F. §§ 404.955(a), 404.981.  When reviewing this final decision, the issue is whether the ALJ's facts are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as relevant evidence a reasonable mind might accept as adequate to support the conclusion.  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  The ALJ is not required to address every piece of evidence or testimony presented, but she must furnish a "logical bridge" between the evidence and her conclusions.  Getch v. Astrue, 539 F.3d 473, 480 (7th Cir. 2008).  Even if reasonable minds could disagree about whether a claimant was disabled, the Court must still affirm the ALJ's decision if the decision has adequate support.  Schmidt v. Apfel, 201 F.3d 970, 972 (7th Cir. 2000).

When reviewing a Magistrate Judge's Report and Recommendation, the Court may accept, reject, or modify, in whole or in part, the findings

or recommendations of the magistrate judge in the report.  Fed.R.Civ.P.

72(b).  The Court reviews <u>de</u> <u>novo</u> portions of the Report to which

specific written objections are made.  <u>Id.</u>

### III. <u>ANALYSIS</u>

Plaintiff objects to all of Magistrate Judge Cudmore's findings.

Specifically, Plaintiff argues that substantial evidence in the record does

not support the ALJ's finding that Plaintiff's impairments or combination

of impairments did not meet or equal a Physical or Mental Impairment

Listing.  Plaintiff also argues that the ALJ did not support her Residual

Functional Capacity finding with substantial evidence.  Furthermore,

Plaintiff argues that the ALJ erred by finding Plaintiff not credible, by

not giving controlling weight to Dr. Smelter's opinion that Plaintiff could

not work, and by rejecting Dr. Wasem's opinions about Plaintiff's mental

and physical limitations.  Lastly, Plaintiff argues that the ALJ was biased,

that the ALJ disregarded vocational expert Bonnie Gladden's testimony,

and that the ALJ failed to adequately consider Dr. Chapa's and Dr. Linda

Lanier's opinions.

A.    **Plaintiff Failed to Demonstrate With Credible Evidence that He Met a Musculoskeletal or Neurological Impairment Listing**

Plaintiff argues first that the ALJ erred in her analysis of Plaintiff's physical impairments. Plaintiff focuses on the ALJ's finding that Plaintiff's reports of his physical impairments were not credible. The ALJ relied on this credibility finding and other evidence in the record to determine that Plaintiff does not meet a Physical Impairment Listing. Plaintiff argues that this credibility finding lacks support in the record and that the flawed credibility finding led to an erroneous determination that Plaintiff does not have an impairment that meets or equals a Listing.

In the decision, the ALJ noted Plaintiff's physical impairments including back and elbow pain, pain and weakness on Plaintiff's entire right side, and headaches. The ALJ then considered the Listings for Musculoskeletal Impairments, including major dysfunction of joint(s) (1.02), reconstructive surgery or surgical arthrodesis of a major weight-bearing joint (1.03), and disorders of the spine (1.04). The ALJ also considered the Listings for Neurological Impairments (11.00 <u>et</u> <u>seq.</u>). As stated previously, if a claimant meets a Listing, the claimant is considered disabled. 20 C.F.R. § 404, Subpart P, Appendix 1. After considering the

evidence, the ALJ determined that Plaintiff had not demonstrated with credible evidence that he had the degree of complications required of any Musculoskeletal or Neurological Listing.

In making this determination, the ALJ observed that Dr. John R. Fisk, M.D. noted Plaintiff's pain response may be exaggerated.  d/e 17-12 at 4.  The ALJ also noted Dr. Roger Traycoff's finding that Plaintiff's function was near normal when not observed and Dr. Joshua Warach's finding that psychogenic[2] factors may be highly contributory to Plaintiff's symptoms.  d/e 17-12 at 7, 13.  Based on these physicians' observations, the ALJ found that Plaintiff's reports regarding the extent of his limitations were not credible.

Plaintiff challenges this credibility finding and argues that the ALJ's credibility finding led to an erroneous determination that Plaintiff is not disabled.  However, in the Seventh Circuit Court of Appeals, an ALJ's credibility finding can rarely be disturbed.  Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006).  In fact, the Court can reverse the ALJ's credibility finding only if the ALJ grounds her finding in an observation

_____

[2] Psychogenic is defined as "of mental origin or causation."  Stedman's Medical Dictionary 1595 (28th ed. 2006).

or argument that is unreasonable or unsupported.  Id. ("Credibility

determinations can rarely be disturbed by a reviewing court, lacking as it

does the opportunity to observe the claimant testifying.  Only if the trier

of fact grounds his credibility finding in an observation or argument that

is unreasonable or unsupported . . . can the finding be reversed.")

(citation omitted).

Here, medical records from Dr. Traycoff, Dr. Fisk, and Dr. Warach,

support the ALJ's determination that Plaintiff exaggerated the extent of

his physical limitations.  The ALJ relied on this credibility finding to

determine that Plaintiff had not demonstrated with credible evidence

that Plaintiff suffers complications that equal or meet a Musculoskeletal

or Neurological Listing.  Since the ALJ's credibility finding has support in

the record, the credibility finding and the finding that Plaintiff does not

meet a Physical Impairment Listing will not be reversed.

**B.     Evidence in the Record Supports the ALJ's Physical Residual
        Functional Capacity Finding that Plaintiff Could Perform Light or
        Sedentary Work Subject to Postural Limitations and Limitations in
        the Use of Plaintiff's Right Extremity**

Plaintiff also contests the ALJ's physical Residual Functional

Capacity finding that Plaintiff could perform light or sedentary work

subject to postural limitations and limitations in the use of Plaintiff's right extremity. Plaintiff contends that the ALJ did not and could not support this finding with substantial evidence. The Court disagrees.

On August 3, 2000, state agency physician Dr. Julio Pardo, M.D., completed a Functional Capacity Assessment. d/e 17-11 at 44-48; d/e 17-12 at 1-3. Dr. Pardo found that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently. Dr. Pardo also found that Plaintiff could stand and/or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, perform unlimited pushing and pulling, could occasionally climb, stoop, and crouch, and frequently balance, kneel, and crawl.

On August 5, 2004, state agency physician Dr. Towfig Arjmand, M.D., also completed a Functional Capacity Assessment. d/e 17-12 at 27-34. Dr. Arjmand found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. Dr. Arjmand also found that Plaintiff could stand and/or walk for six hours in an eight-hour workday and sit six hours in an eight-hour workday. Furthermore, Dr. Arjmand found that Plaintiff was limited in his ability to push or pull with his

upper extremities due to weakness in his right upper and lower
extremities.  Dr. Arjmand also concluded that Plaintiff could never climb
and was limited in his ability to handle and finger with his right hand.
And, even though Plaintiff should avoid concentrated exposure to
hazards such as machinery or unprotected heights, Dr. Arjmand found
Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl.

On September 28, 2004, state agency physician Dr. Frank Jimenez,
M.D., completed yet another Functional Capacity Assessment.  d/e 17-13
at 9-16.  In the Assessment, Dr. Jimenez found that Plaintiff could lift
twenty pounds occasionally and ten pounds frequently and could stand
and/or walk for six hours in an eight-hour workday and sit six hours in an
eight-hour work day.  Dr. Jimenez also found that Plaintiff was limited in
his ability to push or pull with his right upper extremity due to weakness
in his right arm, and could never climb ladders, ropes, or scaffolds.
Plaintiff could, however, occasionally climb ramps or stairs, balance,
stoop, kneel, crouch, and crawl, and occasionally handle and finger with
his right hand.  Lastly, Dr. Jimenez found that Plaintiff could never reach

overhead with his right arm and should avoid concentrated exposure to hazards such as machinery or unprotected heights.

These state agency physicians' findings limit Plaintiff's work capabilities to light or sedentary jobs and to jobs that account for Plaintiff's postural limitations and limitations in Plaintiff's use of his right extremity.  These are the limitations that the ALJ relied upon and incorporated into her physical Residual Functional Capacity finding.  Accordingly, the ALJ had and applied evidence from the record to adequately support her physical Residual Functional Capacity finding.

C.    **Evidence in the Record Supports the ALJ's Finding that Plaintiff Did Not Demonstrate with Credible Evidence that He Met a Mental Impairment Listing**

Plaintiff also argues that his mental health prevents him from obtaining gainful employment.  Plaintiff suffers from depression and anxiety.

In evaluating Plaintiff's mental health, the ALJ considered whether alone and/or in combination, Plaintiff's conditions met or were medically equal to the criteria of Listings 12.04 (depression), 12.06 (anxiety), and 12.07 (somatoform disorder).  To meet one of these Listings, and,

therefore, be considered disabled, Plaintiff had to demonstrate that his mental health conditions caused marked limitations in functioning or resulted in extended episodes of decompensation. The ALJ determined that Plaintiff did not present credible evidence demonstrating that he met a Mental Impairment Listing.

The ALJ's determination that Plaintiff's mental health conditions did not cause marked limitations in functioning or extended episodes of decompensation is supported by the opinions of Dr. Galassi-Hudspeth and Dr. Wharton. Specifically, on August 3, 2004, state agency psychologist Dr. Galassi-Hudspeth, Psy.D., prepared a Psychiatric Review Technique Form and Mental Residual Functional Capacity Assessment. d/e 17-12 at 23-26, 35-48. Dr. Galassi-Hudspeth found that Plaintiff suffered from depression secondary to his medical conditions, anxiety, and somatoform disorder. d/e 17-12 at 38, 40-41. Furthermore, Dr. Galassi-Hudspeth found that Plaintiff's mental impairments caused mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. d/e 17-12 at 45. Dr. Galassi-

Hudspeth noted that Plaintiff could understand and perform simple, rote

routine work tasks but would have difficulty with more complex tasks.

d/e 17-12 at 25.  Dr. Galassi-Hudspeth also noted that Plaintiff could

relate to coworkers and supervisors but might find working with the

public stressful.  d/e 17-12 at 25.

On November 28, 2007, state agency psychologist, Dr. Margaret

Wharton, Psy.D., also completed a Mental Functional Capacity

Assessment.  d/e 17-16 at 1.  In the Assessment, Dr. Wharton found that

Plaintiff's cognitive and attention skills were adequate for simple one-to-

two step tasks.  d/e 17-16 at 1.  Dr. Wharton determined, however, that

Plaintiff's depression moderately limited his ability to carry out detailed

tasks.  d/e 17-16 at 1.  Dr. Wharton also found that Plaintiff's

interpersonal skills were appropriate during a clinical interview.  d/e 17-

16 at 1.  However, Plaintiff described himself as socially withdrawn.  d/e

17-16 at 1.  Therefore, Dr. Wharton found that Plaintiff had moderate

limitations in social expectations.  d/e 17-16 at 1.  Dr. Wharton noted

that Plaintiff's adaptive skills were within normal limits.  d/e 17-16 at 1.

Plaintiff argues that the ALJ's wholesale reliance on state agency psychologists Dr. Galassi-Hudspeth's and Dr. Wharton's opinions exemplifies a total disregard for the opinions of Plaintiff's treating therapist Dr. Wasem.  Dr. Wasem had found marked and extreme limitations in functioning due to Plaintiff's pain and limited use of his right hand and leg.  d/e 17-16 at 25.  Additionally, Dr. Wasem had noted that Plaintiff had been experiencing panic attacks about four times per week, and had high anxiety, severe depression, and auditory hallucinations.  d/e 17-16 at 27-28.  Dr. Wasem also noted extensive limitations in Plaintiff's ability to walk, stand, and sit.  d/e 17-16 at 21. Plaintiff contends that Dr. Wasem's opinions demonstrate the true extent of Plaintiff's limitations.

However, Dr. Wasem is a therapist, not a medical doctor. Accordingly, the ALJ properly rejected Dr. Wasem's opinions regarding Plaintiff's physical limitations.

Regarding Plaintiff's mental health, Dr. Wasem is considered a non-acceptable medical source for purposes of making Social Security Disability determinations because Dr. Wasem is a therapist rather than a

psychologist.  When an ALJ evaluates an opinion from a non-acceptable medical source such as a therapist, the ALJ must consider whether the opinion is consistent with other evidence in the record and any other factors that tend to support or refute the opinion.  See Social Security Ruling 06-03p.

Here, the ALJ noted that Dr. Wasem's opinion that Plaintiff has marked limitations due to his mental health differed significantly from the opinions of state agency psychologists Dr. Wharton and Dr. Galassi-Hudspeth.  The ALJ was justified in giving less weight to Dr. Wasem's opinion in light of Dr. Wasem's non-acceptable medical source status and the significant inconsistencies between Dr. Wasem's mental health opinions and the mental health opinions of Dr. Wharton and Dr. Galassi-Hudspeth.

Furthermore, the ALJ explained that Dr. Wasem's opinions were based on Plaintiff's subjective complaints about his pain and mental health issues.  As discussed, the ALJ found Plaintiff's reports of his limitations not credible and based that credibility finding on evidence in the record.  Because Dr. Wasem's opinions rely heavily on Plaintiff's

subjective reports, the ALJ rejected Dr. Wasem's opinions and relied on Dr. Galassi-Hudspeth's and Dr. Wharton's opinions.  Dr. Galassi-Hudspeth's and Dr. Wharton's opinions support the ALJ's finding that Plaintiff's mental impairments do not cause marked limitations in functioning or prompt extended periods of decompensation.  Therefore, the ALJ's reliance on the opinions of Dr. Galassi-Hudspeth and Dr. Wharton support the finding that Plaintiff did not meet a Mental Impairment Listing.

**D.**    **Evidence in the Record Supports the ALJ's Mental Health Residual Functional Capacity Finding that Plaintiff Could Perform Routine, Repetitive, Unskilled Work**

Additionally, Plaintiff challenges the ALJ's mental health Residual Functional Capacity finding.  However, as stated, Dr. Wharton found that Plaintiff's cognitive and attention skills were adequate for simple one-to-two step tasks and that Plaintiff's depression moderately limited his ability to carry out detailed tasks.  d/e 17-16 at 1.  Similarly, Dr. Galassi-Hudspeth noted that Plaintiff could understand and perform simple, rote routine work tasks but would have difficulty with more complex tasks.  d/e 17-12 at 25.  These opinions adequately support the

ALJ's mental health Residual Functional Capacity finding that Plaintiff could perform routine, repetitive, unskilled work.

E.     The ALJ's Decision Not to Give Controlling Weight to Dr. Smelter's Opinion is Supported by Substantial Evidence

Plaintiff also contests the ALJ's decision not to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Paul Smelter. Dr. Smelter had opined that Plaintiff could not work due to Plaintiff's limited ability to use his right arm and hand.

Generally, a treating physician's medical opinion is entitled to controlling weight when the opinion has support from medically acceptable clinical and diagnostic techniques and is reasonably consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2); SSR 96-2p.  But an ALJ need not accept any physician's opinion if the opinion lacks objective medical support.  Thomas v. Barnhart, 278 F.3d 947, 957 (7th Cir. 2002) (noting that the ALJ must evaluate the credibility of all medical evidence and give reasons for discrediting particular opinions).

Dr. Smelter stated that Plaintiff could not work because of Plaintiff's limited ability to use his right arm and hand.  However, Dr.

Page 22 of 29

Smelter never suggested limits in Plaintiff's ability to use his left arm and hand.  In fact, Dr. Smelter wrote a letter on October 2, 2009, that stated Plaintiff did not have a left arm impairment that would prevent lifting greater than five pounds and that Plaintiff's alleged limitations with his right hand/arm were due to Plaintiff's unwillingness to do so when examined.  d/e 17-17 at 14.

On that note, vocational expert Dr. James Lanier testified that Plaintiff could use his left arm to perform the light work of an order clerk, information clerk, ticket seller, and small package deliverer, or the sedentary work of a surveillance system monitor, ticket checker, and information clerk.  d/e 22-1 at 29.  Based on this testimony, the limits on Plaintiff's ability to use his right arm and hand do not prevent Plaintiff from working.  Accordingly, the ALJ did not err by disregarding Dr. Smelter's initial statement that Plaintiff could not work because of Plaintiff's limited ability to use his right arm and hand.

F.     **The ALJ Rejected the Residual Functional Capacity Finding that Formed the Basis of Vocational Expert Bonnie Gladden's Testimony**

Plaintiff also argues that the ALJ did not address vocational expert Bonnie Gladden's response to the hypothetical questions posed by Plaintiff's attorney during the second administrative hearing.  Vocational expert Gladden testified that a person of Plaintiff's age, education, and past relevant work experience, combined with the Residual Functional Capacity suggested by Plaintiff's attorney, could not find work in the national economy.  d/e 17-18 at 12-13.

However, when posing the hypothetical to vocational expert Gladden, Plaintiff's attorney based the hypothetical on Dr. Wasem's opinions.  Dr. Wasem's opinions included severe and marked limitations on Plaintiff's ability to function.  d/e 17-16 at 21-28.  As stated, the ALJ properly rejected Dr. Wasem's opinions.  Accordingly, the ALJ did not err by declining to rely on vocational expert Bonnie Gladden's testimony.

G.     **The ALJ Constructed a Logical Bridge Between Evidence in the Record and Her Conclusions**

Plaintiff argues further that the ALJ did not build a logical bridge between evidence in the record and her conclusions.  Specifically,

Page 24 of 29

Plaintiff contends that the ALJ did not adequately consider state agency

psychologist Dr. Linda Lanier's and state agency physician Dr. Vittal

Chapa's opinions regarding Plaintiff's mental and physical limitations.

However, the ALJ considered Dr. Chappa's objective findings when

determining Plaintiff's Residual Functional Capacity.  d/e 17-1 at 37-38.

Furthermore, the ALJ discussed Dr. Linda Lanier's diagnoses of

major depression due to Plaintiff's medical condition and panic disorder

with agoraphobia.  d/e 17-1 at 43-44.  The ALJ then explained that Dr.

Lanier's findings were based on Plaintiff's subjective reports of his mental

health.  d/e 17-1 at 43-44.  The ALJ reiterated that she had found

Plaintiff's reports not credible based on other physicians' opinions.  d/e

17-1 at 43-44.  Additionally, the ALJ noted that Dr. Lanier's notes

included reports by Plaintiff of having hallucinations and delusions.  The

ALJ found these reports inconsistent with medical records from Plaintiff's

treating physician, Dr. Smelter, which included no reports of

hallucinations or delusions.  d/e 17-1 at 43-44.

The ALJ's assessment of Dr. Linda Lanier's opinions included

reasons why the ALJ did not accept Dr. Lanier's opinions regarding

Plaintiff's mental health.  As stated, the ALJ's reasons were supported by
other evidence such as the ALJ's credibility finding and an absence of
other evidence in the record to support Plaintiff's claims of hallucinations
and delusions.  These explanations by the ALJ demonstrate a thorough
articulation of her reasons for crediting or rejecting Dr. Lanier's opinions.
See Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000) (explaining that
the ALJ must articulate the reasons for crediting or rejecting evidence of
disability and finding that the ALJ did not minimally articulate why the
treating physician's opinions of disability should not receive controlling
weight).  Accordingly, ALJ Welsch built a logical bridge between the
evidence and her conclusions as she was required to do.

## H.   Plaintiff Has Not Demonstrated that ALJ Welsch Was Biased Against Plaintiff

Plaintiff also argues that ALJ Welsch was biased and that the
second administrative hearing should have been before a different ALJ.
Plaintiff's bias allegations focus primarily on ALJ Welsch's finding, after
the first administrative hearing, that Plaintiff's reports of his physical and
mental limitations were not credible.  In a letter regarding ALJ Welsch's
alleged bias, Plaintiff also noted that he did not like attending the

administrative hearing in a basement or that the hearing was held using video conferencing technology.  Plaintiff asserted that the basement location and video hearing significantly diminished his ability to convey the extent of his physical and mental limitations to the ALJ.

To prevail on a claim of bias, Plaintiff must overcome the presumption that ALJ's are impartial.  <u>Martin v. Astrue</u>, 345 Fed.Appx. 197, 202 (7th Cir. 2009).  Overcoming this presumption requires showing that the ALJ had such deep-seated and unequivocal antagonism that fair judgment was impossible.  <u>Id.</u>

Generally, a judicial ruling, without more, does not give rise to bias. <u>See</u>, <u>e.g.</u>, <u>Marozsan v. United States</u>, 90 F.3d 1284, 1290 (7th Cir. 1996) (finding no evidence of bias where the district court and magistrate judge had ruled against the complaining party on several issues). Consequently, ALJ Welsch's initial denial of Plaintiff's claim for social security disability benefits does not establish bias.

Furthermore, in her first decision, ALJ Welsch supported her credibility finding by relying on Dr. Traycoff's and Dr. Fisk's opinions that indicated Plaintiff may have exaggerated his limitations.  Following

the initial credibility finding, the Appeals Council remanded Plaintiff's

case for the ALJ to resolve an inconsistency between her not disabled

finding and a subsequent finding of disabled by the State Agency.  On

remand, the ALJ again relied on Dr. Traycoff's and Dr. Fisk's opinions as

well as Dr. Warach's opinions that indicated Plaintiff may have

exaggerated his limitations.  As discussed, the ALJ reasonably relied on

these opinions in making her credibility determinations.  Therefore, her

substantiated credibility findings show no bias against Plaintiff.

Lastly, Plaintiff asserts that the hearing location in a basement and

the use of teleconferencing technology limited his ability to express the

extent of his limitations.  These complaints in no way demonstrate bias

by ALJ Welsch toward Plaintiff.

## IV.  <u>CONCLUSION</u>

For the reasons stated, the Court OVERRULES Plaintiff's

Objections and ADOPTS the Report and Recommendation (d/e 23) as

the Order of the Court.  The ALJ supported her decisions with

substantial evidence and did not err by finding Plaintiff's testimony

about the severity of Plaintiff's mental and physical limitations not

credible.  Furthermore, Plaintiff has failed to prove that the ALJ was

biased against Plaintiff.  Accordingly, the Commissioner's Motion for

Summary Affirmance (d/e 21) is GRANTED and Plaintiff's Motion for

Summary Judgment (d/e 19) is DENIED.  THIS CASE IS CLOSED.

IT IS SO ORDERED.

ENTER: November 22, 2013

FOR THE COURT:                          s/ Sue E. Myerscough
                                        SUE E. MYERSCOUGH
                                        UNITED STATES DISTRICT JUDGE